A minor versus Lillian F. And we have Alex Wilson, um, arguing for the pellant. We have no appellee, argument, or brief filed. So you may proceed, Mr. Wilson. Good morning, Your Honor. May it please the Court? Uh, this is a matter... Mr. Wilson, can I, even before you start, can I ask you a question? Yes, sir. You were at the hearing, um, I guess the original hearing on the guardianship, uh, is that correct? Yes, sir. Who did you represent? I represented, uh, uh, Tammy Gerken. And also, I, I, I believe I represented Lillian Flieger. Okay. I think there's some, I think there's some questions we have about how Lillian was treated at the, at the hearing. I believe she was a full litigant at the hearing. I think it's important to know if you represented her at the hearing. I do, I do represent her, and I did represent her at that time. Okay. Thank you. Thank you, Your Honor. Uh, the facts of this case are not complicated. Uh, on, uh, April, or, uh, uh, the parties were married on, uh, 12-18-1999. Uh, they were divorced on, uh, February 29th, 2006. They had two children. Uh, Sonny is one of the children. He's now 13 years old. Patrick W. is the other child, who's now the age of 10. Uh, when the parties were divorced after a while, there was a, there was a guardianship actually set up before the, uh, divorce date. Uh, of April 7th, uh, 2004, Tammy Gerken was made guardian of, uh, the children. Uh, during the, uh, hearing on the petition to dissolve guardianship, uh, the issue was, uh, well, Lillian, uh, Flieger was called as a witness in the case. And, uh, uh, she was asked one, basically one question about her parenting. Uh, and the answer to that question was that she did not believe that, uh, she could care for the children by herself. Uh, that, uh, basically, uh, caused the court to not inquire any further about any other issues about whether Lillian was a fit, uh, parent for the children. Were you not allowed to ask questions? Uh, we were allowed to ask questions, uh, Your Honor. The, uh, and, uh, but, uh, it was clear from the proceedings that the court did not consider Lillian to be a litigant in the case. Uh, it was clear from her statement that, uh, which is on the record that, uh, Lillian could not sit at the counsel table, or the, or the, the table as a, uh, as a, uh, participant in the case. Uh, she, at the time of the hearing, I believe the trial judge felt that she was deciding merely to dissolve, dissolution issue of the guardianship. And I don't really believe she was, uh, at the time was keyed in on the issue of where the children were lined up. The facts of the case further show that Lillian was awarded guardianship after the divorce of this case. Uh, I believe there should have been a hearing to just, to change the status quo of that situation before, uh, before, uh, Patrick was awarded the, the, uh, custody of these, of these two children. What would the trial court do? This terminated guardianship. What would, where would the children go? Well, I think there should have been a bifurcated hearing, and I think there could have been a short bifurcation. But, uh... Did you ask for that? Did you ask the trial judge, or did you file a motion requesting that? Well, there was some discussion in that before the hearing was, took place, and it was the understanding at the time that there was going to be separate hearings. Is that in the record? It's not in the record. That's, that's one of the problems here. Uh, the other evidence that was elucidated at this hearing is, is pretty straightforward. Uh, Lillian stated that she couldn't care for the children by herself. Almost the entire rest of the hearing was devoted to exploring Patrick's situation as father of the children, his economic situation. Economics were that he was, he had reported an income of $13,000 the year before to the, to the IRS. Uh, he had a prolonged period of unemployment. Uh, he testified that he worked a solid job a week and a half prior to the hearing. He really didn't have a significant work history before then. Uh, it was his plan to move the children to Missouri. The children actually did move to Missouri after the ruling of the court. Uh, they reside there with, uh, I think it's 10 other people in a, in a house, uh, with approximately four people per bedroom. Uh, suffice it to say that, uh, Patrick was not, uh, an affluent litigant. Lillian's not affluent as well, but I think that given the, I, I think that there was a tremendous unfairness done to Lillian. I don't think the case was considered. I don't think that she got a fair hearing in this case. But, but it was, I gather from your brief that Lillian's efforts and purpose there and here is to retain, have guardianship retained with her mother? Yeah, she preferred to have guardianship retained with her mother. The testimony at the hearing was that the children were... So what kind of hearing would she have had at that point? I mean, how, how should she have been treated fairly at the hearing? Well, I think there should have been an investigation by, at the bare minimum, guardian ad litem to investigate the living conditions of the children, both at the mother's and the father's proposed residence. I don't think the judge should have, uh, launched into a decision... But you're kind of arguing, too, you're, you're going both different ways. Essentially, she did not want guardianship changed. Correct. She did not want custody at that point. She wanted guardianship to retain, be retained with the mother. Because it was in the best interest of the children at the time the guardianship was set up. So, but that was the only position, that was the only issue the court had before it, correct? Well, I, I would say necessarily there has to be a decision, if the guardianship is to be dissolved, where the children are going to live. So, uh, I don't think that the... I think, I think legally, once the guardianship is dissolved, the matter goes back to the status quo. Which meant, means you're saying that she had custody. Yeah, I, I believe that, uh, upon dissolution of the guardianship, it's clear that custody should have been awarded to Lily. Did you ever argue that before? Did you ever suggest that to the trial judge? Uh, one of the problems with arguing this case, which was not bifurcated, was that I wanted to maintain a consistent position to the trial judge that we did not want the guardianship to be dissolved. Uh, clearly the children were better off living with their guardian. Well, you could have argued it alternatively, if you had lost the guardianship, the remedy you were looking for, but there appeared to be no other suggestion to the trial judge what she would do. Um, well, I, I might be mistaken, but I thought that there was, I thought there was some discussion, and if there, if it isn't on the record, I know that that matter was discussed off the record with the judge. Was there a request for a guardian ad litem to be appointed, and that was rejected by the trial court, or was no request made? Uh, no request was made because the only hearing that was heard was the issue of, of guardianship, and that matter was taken under advisement at the end of the evidence in the case. So, uh, we think it, uh, could have been very easy to remedy this case if they have a full exploration of the facts of the case. I don't think that the judge did it. Uh, I, I can't speak for the judge, but, uh, there was nothing other than a very cursory, uh, uh, analysis of the issues in the case, and for that reason, uh, I believe this matter should be remanded for a hearing. Was there discussion about removal of the children from the state of Illinois at the hearing? Yes, sir. Uh, removal of children from the state, according to the case law, uh, places a burden upon the party seeking to remove the children from the state to show that it's clearly in the best interest of the children for them to be removed from the state. Uh, I don't believe that, uh, uh, there was such a showing in this case. Uh, I, I don't think that there was any showing that it was in a, that the children were better off by, uh, having the guardianship dissolved, and that's, that's obviously one of the main issues that we would like this court to review. Now, the judge has got in her ardor where she, she does address the issue. She's got that there was no objection to the removal. She, of course, also has there was no motion to remove the children. Uh, did, did you, was there an argument about removing the children, uh, at any point in time, or was just that involved in the whole process? I think it was involved in the whole process, uh, during the entire hearing. It was discussed that Mr. Flieger intended to, uh, remove the children. He, he was residing in Missouri at the time? Yes, he was. Of the hearing. That's correct. So it was, it was not a future event. It was, it was something that would have happened by virtue of the award. Absolutely. She, he was a Missouri litigant at the time that this matter was heard. And, uh, I, I don't believe that there was a balance that was made by the court to figure out what interests lied where. And I think for that reason, it's, uh, this matter should be, uh, at the very minimum, remanded if, if the, uh, guardianship is, is not reinstated. I've got to ask you this. Was there any, um, any visitation? I mean, did you ever ask for a visitation? Oh, okay. There was an order that was entered after this, uh, dissolution, and a visitation has been ordered, and it's been ongoing. Okay. Thank you, Mr. Wilson. Thank you. Do you have anything else? I have nothing else. Thank you for your briefs and arguments, and we'll take them now.